*In re* MARRIAGE OF PATRICIA JOAN WHITE, Petitioner-Appellee, and CHARLES GREGG WHITE, Respondent-Appellant.

Fifth District   No. 5—85—0161

Opinion filed December 17, 1986.

Donald V. Ferrell, of Jelliffe, Ferrell & Morris, of Harrisburg, for appellant.

J. C. Mitchell, of Mitchell & Armstrong, Ltd., of Marion, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Respondent, Charles Gregg White, appeals from a judgment of the circuit court of Saline County awarding petitioner, Patricia Joan White, half of the goodwill value of respondent's professional dental corporation.

The parties' marriage was dissolved on February 13, 1979. On July 11, 1979, the trial court entered a final judgment distributing property and awarding maintenance, custody, and child support. Petitioner appealed from that judgment contending that the court's failure to classify the dental corporation, Charles G. White, Ltd., as marital property constituted reversible error. (*In re Marriage of White* (1981), 98 Ill. App. 3d 380, 381, 424 N.E.2d 421, 422.) This court held that the professional corporation was marital property. (98 Ill. App. 3d 380, 383, 424 N.E.2d 421, 423.) The cause was remanded with directions to admit evidence of the value of the corporation, including evidence regarding the value of goodwill. (98 Ill. App. 3d 380, 384, 424 N.E.2d 421, 424.) On remand, the trial court valued the goodwill at $88,000 and awarded petitioner $44,000 plus attorney fees. Respondent appeals.

Respondent contends that the trial court's valuation of goodwill constitutes an abuse of discretion. We note that the finding that the physical assets of the professional practice had no value is not disputed. The dispute in this cause centers on whether the "market value approach" or the "capitalization of excess earnings approach" is

the proper method of valuing goodwill. Respondent's evidence was based upon the former approach and supported a conclusion that the goodwill of the corporation had no value. Petitioner's expert witness, Leroy Grossman, a professor of economics, utilized the latter approach and valued the goodwill at $84,000.

■■ ■ A workable definition of goodwill is that "goodwill is the value of a business or practice that exceeds the combined value of the physical assets." (2 Valuation and Distribution of Marital Property, sec. 23.04[1] (M. Bender ed. 1984).) The market value of goodwill is the amount a willing buyer would pay for a professional practice in excess of the value of the physical assets. (See generally *In re Marriage of Fortier* (1973), 34 Cal. App. 3d 384, 109 Cal. Rptr. 915.) A value based upon the capitalization-of-excess-earnings method is the capitalization at a fair rate of return of the amount by which the average income of the professional practitioner exceeds the hypothetical salary that would be earned as an employee with similar qualifications. (*In re Marriage of Kapusta* (1986), 141 Ill. App. 3d 1010, 1016, 491 N.E.2d 48, 52.) The trial court relied upon the excess-earnings method in valuing the goodwill of the dental practice.

●3 Respondent argues that the excess-earnings method is undesirable because it invariably produces a much higher figure than market valuation. (See, *e.g.*, *In re Marriage of Fortier* (1973), 34 Cal. App. 3d 384, 109 Cal. Rptr. 915.) Conversely, the disadvantage of the market-value approach is that it tends to undervalue goodwill, particularly when applied to a professional practice. (2 Valuation and Distribution of Marital Property, sec. 23.04[2] (M. Bender ed. 1984).) Courts in other jurisdictions have recognized that capitalization of excess earnings is a proper method of valuing the goodwill of a professional practice. (See, *e.g.*, *Dugan v. Dugan* (1983), 92 N.J. 423, 457 A.2d 1; *Poore v. Poore* (1985), 75 N.C. App. 414, 331 S.E.2d 266; *In re Marriage of Foster* (1974), 42 Cal. App. 3d 577, 117 Cal. Rptr. 49.) Recently, this court recognized this method of valuation, although we determined that it had been applied incorrectly. (*In re Marriage of Kapusta* (1986), 141 Ill. App. 3d 1010, 1016, 491 N.E.2d 48, 52.) We see no reason to restrict the trier of fact to one method of valuation at the exclusion of all other methods. Consequently, the trial court did not err in failing to adopt the market-value approach relied upon by respondent.

Respondent maintains that even if the capitalization-of-excess-earnings approach is an acceptable method of valuation, the decision below must still be reversed because the method was improperly applied. In particular, respondent contends that the trial court erred in

relying on Grossman's testimony because his opinion was not based upon knowledge of professional dental practices located in the southern Illinois area.

Respondent relies upon *In re Marriage of Kapusta* (1986), 141 Ill. App. 3d 1010, 491 N.E.2d 48, and *Dugan v. Dugan* (1983), 92 N.J. 423, 457 A.2d 1, to support his contention. In both decisions, the courts determined that the value of a professional practice had been incorrectly calculated under the capitalization-of-excess-earnings approach. (*In re Marriage of Kapusta* (1986), 141 Ill. App. 3d 1010, 1016, 491 N.E.2d 48, 52; *Dugan v. Dugan* (1983), 92 N.J. 423, 441-44, 457 A.2d 1, 10-12.) In *Dugan*, the court was concerned that there was no showing of how northern New Jersey attorneys of comparable age and expertise fit into the comparison group of attorneys from throughout the United States. (92 N.J. 423, 442, 457 A.2d 1, 11.) In *Kapusta*, the court noted that there was no showing that surgeons in respondent's specialty, with the same age, qualifications, and experience in the Chicagoland area were receiving salaries approximately equivalent to the average shown. 141 Ill. App. 3d 1010, 1016, 491 N.E.2d 48, 52.

█ These cases are distinguishable from the instant cause. Valuing goodwill in accordance with the capitalization-of-excess-earnings approach is accomplished by fixing the amount by which the independent professional's adjusted earnings exceed that which would have been earned as an employee by a person with similar qualification in the same general locale. (*In re Marriage of Kapusta* (1986), 141 Ill. App. 3d 1010, 1016, 491 N.E.2d 48, 52; *Dugan v. Dugan* (1983), 92 N.J. 423, 439, 457 A.2d 1, 9.) In *Kapusta* and *Dugan*, the courts were concerned with the miscalculation of the hypothetical employee's salary by the failure to consider the factor of locale, as well as other comparable factors. (*In re Marriage of Kapusta* (1986), 141 Ill. App. 3d 1010, 1016, 491 N.E.2d 48, 52; *Dugan v. Dugan* (1983), 92 N.J. 423, 442, 457 A.2d 1, 11.) This concern is not present in the instant cause because the hypothetical salary of $35,000 was stipulated to by the parties. *Kapusta* and *Dugan* are also distinguishable in that the failure to calculate accurately the salaried employee's income was only one of several misapplications of the capitalization-of-excess-earnings approach relied upon by the courts in reversing the valuations reached by the trial courts. *In re Marriage of Kapusta* (1986), 141 Ill. App. 3d 1010, 1016, 491 N.E.2d 48, 52; *Dugan v. Dugan* (1983), 92 N.J. 423, 441-44, 457 A.2d 1, 10-12.

█ Respondent also argues that regardless of the approach used to value goodwill, an expert must demonstrate knowledge of the lo-

cale of the professional practice being valued. Respondent asks this court to adopt the foundation requirement which governs the competency of expert witnesses in medical malpractice actions as the requisite standard of competency for experts who testify as to the value of a professional practice. This foundation requirement mandates an affirmative showing that the witness is familiar with the medical practice in a community similar to that where the defendant physician practices before the witness is deemed competent to testify. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 244, 489 N.E.2d 867, 873; *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 1067, 458 N.E.2d 1072, 1078.) Certainly, familiarity with the locale of the professional practice or a similar locale is helpful to a valuation of goodwill regardless of the method used. (*Dugan v. Dugan* (1983), 92 N.J. 423, 440-41, 457 A.2d 1, 10.) However, in the instant cause the necessity for such knowledge was lessened because of the stipulation. Grossman testified that specific information of other dental practices in the southern Illinois area was not crucial to his analysis because he had data of respondent's income and because the parties had stipulated to the salary of a similarly situated professional. Although Grossman had no specific knowledge of any other professional dental practice in the southern Illinois area, he did know that there was only one other dentist practicing in Eldorado and that the town had two hospitals. Grossman considered these variables in determining the capitalization rate. (See generally *Dugan v. Dugan* (1983), 92 N.J. 423, 441-42, 457 A.2d 1, 11-12.) Goodwill should be valued with great care because the professional practitioner is forced to pay the ex-spouse tangible dollars for an intangible asset at a value concededly arrived at on the basis of some uncertain elements. (*Dugan v. Dugan* (1983), 92 N.J. 423, 435, 457 A.2d 1, 7.) It is precisely because of these uncertain elements and because the desirability of one method of valuation over another will vary depending on the facts presented that it is inappropriate to apply the foundation requirement governing the competency of expert witnesses in medical malpractice actions to the instant cause. The question of whether the expert's opinion was based upon sufficient familiarity with the locale of the professional practice, or a similar locale, should be dealt with as any other issue of fact.

■ The trial court valued the goodwill at $88,000, whereas Grossman had expressed the opinion that the goodwill had a value of $84,000. In light of the many variables which Grossman testified affected his valuation, we believe that the trial court's valuation falls within the range testified to by the experts and, therefore, does not

constitute an abuse of discretion. *In re Marriage of Brooks* (1985), 138 Ill. App. 3d 252, 260, 486 N.E.2d 267, 272.

Respondent's final contention is that the award of $5,000 for petitioner's attorney fees constitutes an abuse of discretion. (*In re Marriage of Angiuli* (1985), 134 Ill. App. 3d 417, 423, 480 N.E.2d 513, 518.) Respondent bases this contention on the failure of petitioner to use the $5,000 previously awarded to her for educational expenses for its designated use. We cannot conclude that simply because petitioner did not use this money for her education the trial court's award of attorney fees constitutes an abuse of discretion.

For the reasons given, the judgment of the circuit court of Saline County is affirmed.

Affirmed.

KASSERMAN and WELCH, JJ., concur.